UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
RICHARD GALI,

                    Plaintiff,

    -against-

ASTORIA BANK,

                    Defendant.
--------------------------------------------------------------X

**MEMORANDUM AND ORDER**
16-CV-3549 (SIL)

**LOCKE, Magistrate Judge:**

    Presently before the Court is Defendant Astoria Bank's ("Defendant") motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  *See* Docket Entry ("DE") [18].  By way of Complaint dated June 28, 2016, Plaintiff Richard Gali ("Plaintiff" or "Gali") commenced this action, seeking, *inter alia*, to recover for Defendant's alleged violations of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* and its implementing regulations, known as Regulation X, 12 C.F.R. §§ 1024.1–1024.41.  *See* DE [1].  On December 13, 2016, Defendant filed the instant motion, which Plaintiff opposes.  *See* DE [18], [19].  On April 16, 2017, Judge Azrack referred Astoria Bank's motion to this Court for a Report and Recommendation as to whether it should be granted.  *See* DE [22].  On March 31, 2017, pursuant to 28 U.S.C. § 636(c), the parties filed an executed Notice, Consent, and Reference of a Civil Action to a Magistrate Judge, indicating their intention to have this Court "conduct all proceedings and order the entry of a final judgment," which Judge Azrack So Ordered on April 3, 2017.  *See* DE [23, 24].

For the reasons set forth herein, Defendant's motion is granted in its entirety with prejudice.

## I.   BACKGROUND

Unless otherwise noted, the following facts are taken from Plaintiff's Complaint, and are accepted as true for purposes of the instant motion.

### A.   <u>Relevant Facts</u>

The gravamen of Plaintiff's claims is that, on March 24, 2016, Astoria Bank wrongfully foreclosed on a mortgage encumbering his family home, the real property located at 14 Glen Hollow Drive, E36, Holtsville, New York, 11742-2440 (the "Subject Property"). *See* Compl., DE [1], ¶¶ 22, 23. From January 10, 2014 until March 24, 2016, Defendant Astoria Bank was the owner and servicer of a note and security agreement (the "Loan") on the Subject Property. *See id.* ¶ 3. After a default on the Loan by Plaintiff Gali, Astoria Bank scheduled a foreclosure sale on the Subject Property for March 24, 2016. *See id.* ¶ 19. On or about January 15, 2016, after the foreclosure sale had already been scheduled, Gali, through his prior counsel, the Acocella Law Group, Inc. ("Acocella"), submitted a Home Affordable Modification Program ("HAMP") request to Defendant Astoria Bank to modify the terms of the Loan. *See id.* ¶ 18. Plaintiff alleges that, on January 29, 2016, Astoria Bank confirmed that a complete HAMP request had been received. *See id.*

On March 18, 2016, Acocella called counsel for Astoria Bank, Stern & Eisenberg, P.C. ("Stern"), and confirmed that the HAMP request was still pending and that the foreclosure sale had been postponed. *Id.* ¶ 21. On March 22,

2016, Acocella called Stern and, once again, confirmed that the sale had been postponed. *See id.* ¶ 25. However, the next day, Acocella received an email from Stern stating that Astoria Bank was proceeding with the foreclosure sale on March 24, 2016. *See id.* ¶ 30. On March 24, 2016, at 10:36 a.m., the foreclosure sale was completed. *See id.* ¶ 33. That same day, at 10:59 a.m., Gali filed for emergency bankruptcy protection pursuant to Chapter 13 of the U.S. Bankruptcy Code. *See id.* ¶ 32.

On April 20, 2016, in an attempt to "fight the wrongful, fraudulent and illegal foreclosure," Plaintiff retained his current counsel who sent the following requests for information ("RFI") via certified mail to Astoria Bank seeking: (1) a reinstatement statement pursuant to 12 C.F.R. § 1026.36 of Regulation Z; (2) the transactional history for the life of the Loan pursuant to 12 C.F.R. § 1024.36 of Regulation X; and (3) the identity of the original owner, original servicer, current owner and current servicer of the Loan pursuant to 12 C.F.R. § 1024.36. On April 21, 2016, Gali, through his counsel, also sent a Notice of Error ("NOE") to Defendant pursuant to 12 C.F.R § 1024.36(c). *See id.* ¶¶ 36-44. After having failed to receive a written acknowledgment of the previously sent RFIs, Plaintiff sent an additional NOE on May 16, 2016. *See id.* ¶ 45. On June 6, 2016, Plaintiff received an unspecified acknowledgment of receipt of one of the RFIs. *See id.* ¶ 46. Gali alleges that, to date, Astoria Bank has not supplied any of the information that it was required to produce pursuant to the RFIs. *See id.* ¶ 46.

### B. <u>Procedural Background</u>

By way of Complaint dated June 28, 2016, Plaintiff commenced this action seeking to enforce provisions of Regulation X and obtain a temporary stay and preliminary injunction preventing Defendant from instituting eviction proceedings. *See id.* ¶ 7.   Gali alleges that Astoria violated:  (i) 12 C.F.R. § 1024.41(c)(1) by proceeding with a foreclosure sale without timely granting or rejecting a pending loss mitigation package ("First Cause of Action"); (ii) 12 C.F.R. § 1024.41(g) by proceeding with a foreclosure sale while Plaintiff's loss mitigation application was still pending ("Second Cause of Action"); (iii) 12 C.F.R. § 1024.36(c) by failing to provide written acknowledgment of receipt of an RFI  requesting the original owner, current owner and servicer of the Loan ("Third Cause of Action"); (iv)  12 C.F.R. § 1024.36(c) by failing to provide written acknowledgment of receipt of an RFI requesting the complete transactional history of the Loan ("Fourth Cause of Action"); (v) 12 C.F.R. § 1024.36(c) by failing to provide written acknowledgment of receipt of an RFI requesting the current mortgage balance of the Loan ("Fifth Cause of Action"); (vi) 12 C.F.R. § 1024.36(c) by failing to provide written acknowledgment of receipt of an RFI requesting a reinstatement statement for the Loan ("Sixth Cause of Action"); (vii) 12 C.F.R. §1024.35(d) failing to provide written acknowledgment of receipt of the first NOE ("Seventh Cause of Action"); (viii) General Business Law § 349 by engaging in deceptive business, trade, or commerce acts and practices ("Eighth Cause of Action"); and (ix) New York State Department of Financial Services Regulations Part 419.3 ("Ninth Cause of Action").  *See id.* ¶¶ 66-140.  In addition to actual and statutory

damages, Plaintiff seeks injunctive relief restraining Astoria Bank from evicting Gali from the Subject Property ("Tenth Cause of Action").  *See id.* ¶¶ 141-47.  In response, on December 13, 2016, Defendant moved pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) for dismissal based on lack of subject matter jurisdiction and for failure to state a claim for which relief can be granted. *See* DE [18].

## II.   LEGAL STANDARD

### A.  Fed. R. Civ. P. 12(b)(1)

Pursuant to Article III, Section 2 of the United States Constitution, "the jurisdiction of the federal courts is limited to 'Cases' and 'Controversies,' which 'restricts the authority of the federal courts to resolving 'the legal rights of litigants in actual controversies.'" *Amityville Mobile Home Civic Ass'n v. Town of Babylon*, No. 14-CV-2369, 2015 WL 1412655, at *2 (E.D.N.Y. Mar. 26, 2015) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 71 133 S. Ct. 1523, 1528 (2013)).  In the absence of a case or controversy, Fed. R. Civ. P. 12(b)(1) "provides that a party may move to dismiss a case for lack of subject matter jurisdiction."  *Amityville Mobile Home Civic Ass'n*, 2015 WL 1412655, at *3; *see also Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.").  The Second Circuit has held that, "[t]he hallmark of a case or controversy is the presence of adverse interests between parties who have a substantial personal stake in the outcome of the litigation."  *Evans v.*

*Lynn*, 537 F.2d 571, 591 (2d Cir. 1975).  Therefore, to survive a defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), "a plaintiff must allege facts 'that affirmatively and plausibly suggest that it has standing to sue.'"  *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 227 (E.D.N.Y. 2015) (quoting *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)); *see also City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 340 (E.D.N.Y. 2008) ("As standing is 'a limitation on the authority of a federal court to exercise jurisdiction,' it is properly addressed within the context of a Rule 12(b)(1) motion.") (quoting *All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 88 n.6 (2d Cir. 2006)).

In deciding a motion to dismiss for lack of subject matter jurisdiction, "a court must accept as true all material factual allegations in the complaint and refrain from drawing inferences in favor of the party contesting jurisdiction."  *U.S. ex rel. Phipps v. Comprehensive Cmty. Dev. Corp.*, 152 F. Supp. 2d 443, 449 (S.D.N.Y. 2001).  However, "[w]here subject matter jurisdiction is challenged, . . . a court may consider materials outside the pleadings, such as affidavits, documents and testimony."  *Id.*; *see also Pyramid Crossgates Co.*, 436 F.3d at 88 n.8 ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56."); *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 231-32 (E.D.N.Y. 2003) ("In a Rule 12(b)(1) motion, the Court may consider affidavits and other material beyond the pleadings to resolve the jurisdictional question.").  The party advocating jurisdiction bears the burden of

establishing its existence by a preponderance of the evidence. *See In re Jesup & Lamont, Inc.*, No. 12-1169, 2012 WL 3822135, at *2 (S.D.N.Y. Sept. 4, 2012).

### B. **Fed. R. Civ. P. 12(b)(6)**

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). But, a pleading "that offers only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966).

In reviewing a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See LaFaro v. New York Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009). "[T]hreadbare recitals of the elements of a cause of action" that are supported by "conclusory" statements and mere speculation are inadequate and subject to dismissal. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted). In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court may consider:

> (1) the factual allegations in the complaint, which are accepted as true; (2) documents attached to the complaint

> as an exhibit or incorporated . . . by reference; (3) matters
> of which judicial notice may be taken; and (4) documents
> upon whose terms and effect the complaint relies
> heavily, *i.e.,* documents that are "integral" to the
> complaint.

*Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 498 (S.D.N.Y. 2003) (internal citation

omitted); *see also Miotto v. Yonkers Pub. Sch.*, 534 F. Supp. 2d 422, 425 (S.D.N.Y.

2008) ("[I]n assessing the legal sufficiency of a claim, the court may consider only the

facts alleged in the complaint, and any document attached as an exhibit to the

complaint or incorporated in it by reference.").

### C. RESPA Statutory Framework

Plaintiff alleges violations of various loan servicing regulations which were

promulgated by the Consumer Financial Protection Bureau ("CFPB") as authorized

under RESPA. *See* Compl., ¶ 7. RESPA is a consumer protection statute that was

enacted by Congress to "insure that consumers throughout the Nation are provided

with greater and more timely information on the nature and costs of the settlement

process and are protected from unnecessarily high settlement charges caused by

certain abusive practices that have developed in some areas of the country."

12 U.S.C. 2601(a). The statute applies to "federally related mortgage loan[s]," a term

that includes loans secured by a lien on residential real estate "designated principally

for the occupancy of from one to four families," for which the lender is federally

regulated or has deposits or accounts insured by the federal government. 12 U.S.C.

§ 2602(1)(A),(B).

In 2010, RESPA was amended pursuant to the Dodd–Frank Wall Street Reform and Consumer Protection Act to address the duties of servicers of federally related mortgage loans regarding borrower requests for information or assertions of error. *See* Pub. L. No. 111–203, 124 Stat. 1376 (2010). The Act also created the CFPB, which is charged with creating rules, regulations, and interpretations necessary to achieve RESPA's purpose. *See* 12 U.S.C. § 2617(a). The CFPB implemented a series of mortgage servicing rules, effective January 10, 2014, with various loss mitigation procedures that servicers must follow after a payment default. *See* Mortgage Servicing Rules under the Real Estate Settlement Procedures Act ("Regulation X"), 78 Fed. Reg. 10696–899 (February 14, 2013) (codified at 12 C.F.R. pt. 1024). A borrower may enforce the provisions of Regulation X pursuant to 12 U.S.C. § 2605(f). *See* 12 C.F.R. § 1024.41(a). Section 2605(f), in relevant part, provides:

> Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:
>
> (1) Individuals
>
> In the case of any action by an individual, an amount equal to the sum of—
>
> (A) any actual damages to the borrower as a result of the failure; and
>
> (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1000.

12 U.S.C. § 2605(f)(1).

Plaintiff specifically alleges violations of Sections 1024.41(c)(1), 1024.41(g), 1024.36(c), and 1024.35 of Regulation X.  Pursuant to 12 C.F.R. § 1024.41(c)(1), A mortgage servicer need not consider a loss mitigation application received less than thirty-seven days before a foreclosure sale. 12 C.F.R. § 1024.41(c)(1).  However, if the servicer receives a facially complete application more than thirty-seven days before a foreclosure sale, it shall then evaluate all loss mitigation options available and notify the borrower in writing within 30 days about which loss mitigation options, if any, it will offer.  *See id.*  If a servicer receives an incomplete loss mitigation application more than thirty-seven days before a foreclosure sale, then the servicer must act with "reasonable diligence" to obtain documents and information to complete the application. *See* 12 C.F.R. § 1024.41(c)(2)(ii). If the servicer fails to seek additional documentation, then the incomplete application "shall be considered facially complete." *See* 12 C.F.R. § 1024.41(c)(2)(iv).

12 C.F.R. § 1024.41(g) prohibits a loan servicer from conducting a foreclosure sale until after a borrower's loss-mitigation process has been completed. *See* 12 C.F.R. § 1024.41(g).  This "dual-tracking" prohibition applies only when a borrower submits a complete loss-mitigation application thirty-seven days before the foreclosure sale.  *Id.*; *see also Gresham v. Wells Fargo Bank*, N.A., 642 Fed. App'x. 355, 359 (5th Cir. 2016) (finding that dual tracking occurs when the "lender actively pursues foreclosure while simultaneously considering the borrower for loss mitigation options.").  Section 1024.36(c) of Regulation X provides that within five days of a servicer receiving an information request from a borrower, the servicer shall

10

provide to the borrower a written response acknowledging receipt of the information request. 12 CFR § 1024.35(d) requires a servicer who receives a notice of error to acknowledge receipt within five days.

## III.   DISCUSSION

In the instant motion, Defendant argues that Plaintiff:  (i) lacks standing to bring the claims he asserts in this action, and (ii) has failed to state a claim upon which relief can be granted.  *See* Astoria Bank's Memorandum of Law ("Def. Br."), DE [18-26].   Applying the standards outlined above, the Court considers each argument in turn.

### A. <u>Standing</u>

Initially, Astoria Bank moves to dismiss Gali's federal claims on standing grounds.  To establish standing to sue, a plaintiff must satisfy three constitutional requirements:  "(1) injury-in-fact—an injury that is 'concrete and particularized' and is 'actual or imminent, not conjectural or hypothetical'; (2) an injury that is fairly traceable to the challenged action; and (3) an injury that will likely be redressed by a favorable ruling of the court."  *Berkson v. Gogo LLC*, 97 F. Supp. 3d 359, 405 (E.D.N.Y. 2015) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 (1992)); *see also Anjum v. J.C. Penney Co., Inc.*, No. 13-CV-460, 2014 WL 5090018, at *6 (E.D.N.Y. Oct. 9, 2014) ("Standing refers to the requirement that a plaintiff in federal court suffer a non-speculative injury-in-fact, traceable to the conduct of the defendant, and capable of redress by a favorable decision.").

### i. Injury-in-Fact

"To establish injury-in-fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016) (quoting *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136). For an injury to be "particularized," it "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1, 112 S.Ct. at 2136 n.1. "In comparison, a "concrete" injury must be '*de facto*;' that is, it must actually exist." *Spokeo*, 136 S.Ct at 1548. An injury is not automatically concrete "whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549. In *Spokeo*, the Supreme Court addressed the injury-in-fact requirement of Article III standing as it applies to the vindication of statutory rights. The Court explained:

> Congress' role in identifying and elevating intangible harms does not mean that a plaintiff automatically satisfies the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right. Article III standing requires a concrete injury even in the context of a statutory violation. For that reason, [the plaintiff] could not, for example, allege a bare procedural violation, divorced from any concrete harm, and satisfy the injury-in-fact requirement of Article III.

*Id.* at 1549. Recently, the Second Circuit has stated that it did "not understand *Spokeo* categorically to have precluded violations of statutorily mandated procedures from qualifying as concrete injuries supporting standing." *Strubel v. Comenity Bank*, 842 F.3d 181, 189 (2d Cir. 2016). Rather, "some violations of statutorily mandated

procedures may entail the concrete injury necessary for standing," and "where Congress conferred [a] procedural right to protect a plaintiff's concrete interests," the critical inquiry is whether "the procedural violation presents a 'risk of real harm' to that concrete interest." *Id.* at 189-90 (quoting *Spokeo*, 136 S.Ct. at 1549).

Gali has plausibly alleged an injury-in-fact as to his First and Second Causes of Action. Astoria Bank argues that Gali has failed to satisfy the injury-in-fact requirement as to those Causes of Action as: (i) the foreclosure of the Subject Property was a self-inflicted harm; (ii) Astoria had no obligation to offer loss mitigation assistance and (iii) Plaintiff does not have a private right of action under HAMP. *See* Def. Br., DE [18-26], at 9-14. In response, Plaintiff argues that the "suit is based on his claim that [D]efendant violated his substantive rights under Regulation X by" engaging in "'Dual Tracking[,]' an action expressly prohibited by Regulation X." Plaintiff's Memorandum in Opposition (Pl. Opp.), DE [11], at 15-16. While Defendant characterizes Plaintiff's default on the Loan as a "self-inflicted harm," the alleged dual tracking violations which resulted in his purported bankruptcy proceeding damages are not. Rather, Gali alleges that, in addition to the allegedly improper foreclosure, he sustained actual damages in the form of bankruptcy filing fees and fees incurred taking a credit counseling class. Such alleged pecuniary losses are sufficient to demonstrate actual damages pursuant to Section 2605(f). *See In re Atayde*, 637 F. App'x 337, 338 (9th Cir. 2016) (finding that plaintiff was entitled to recover bankruptcy filing fees as a form of actual damages); *Hutchinson v. Delaware Sav. Bank FSB*, 410 F. Supp. 2d 374, 383

(D.N.J. 2006) (finding that the allegation of pecuniary losses are sufficient to constitute actual damages under RESPA). Astoria Bank is correct in asserting that, under Regulation X, it had no obligation to offer Gali any specific loss mitigation options. *See* 12 C.F.R. §1024.41(a) ("Nothing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific loss mitigation option."). However, Regulation X does set forth procedures for the evaluation of loss mitigation applications, and violations of those procedures are enforceable pursuant to 12 U.S.C. § 2605(f). Therefore, while not obligated to offer any specific loss mitigation option, Defendant was still compelled to follow the procedural requirements of Regulation X. Moreover, RESPA specifically provides a private right of action for violations of Regulation X, whereby a plaintiff can recover for two types of damages: (1) "actual damages to the borrower;" or (2) statutory damages "in the case of a pattern or practice of noncompliance . . . . " *Gorbaty v. Wells Fargo Bank, N.A.*, 10-CV–3291, 2012 WL 1372260, at *3 (E.D.N.Y. Apr. 18, 2012) (quoting 12 U.S.C. § 2605(f)). Gali has alleged not only a procedural violation, but also a concrete and particularized harm in the form of purported actual damages. Accordingly, Plaintiff has adequately alleged an injury-in-fact as to the First and Second Causes of Action.

Conversely, as Defendant argues, Plaintiff's Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action are bare procedural statutory violations for which Plaintiff fails to allege injuries-in-fact sufficient to confer standing. Plaintiff's Opposition is silent as to Defendant's position regarding these Causes of Action, and

14

therefore, he has waived any opposition and the claims are abandoned.  *See Thomas v. N.Y. City Dept. of Educ.*, 938 F.Supp.2d 334, 354 (E.D.N.Y. 2013) ("A Court may and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.") (internal citations and quotations omitted).

Alternatively, Plaintiff's Complaint alleges that the RFIs and NOEs underlying these Causes of Action were sent to "fight the foreclosure," *see* Compl. ¶ 36, and because of Defendant's actions in failing to respond, he sustained actual damages in the form of bankruptcy filing fees and emotional distress damages. *See* Pl. Br. at 17; *see also* Compl., ¶¶ 81, 83, 90, 92, 99, 101, 108, 110, 116, 118. However, Plaintiff's Complaint concedes that the foreclosure sale had already occurred and bankruptcy filing fees already paid prior to the date that the RFIs and NOEs were mailed out.  Therefore, Plaintiff cannot plausibly allege that Defendant's failure to respond to the RFIs and NOEs proximately caused him to sustain his actual damages.  Moreover, Gali's claims of emotional distress damages are not recoverable under RESPA.  *See Wenegieme v. Bayview Loan Servicing*, No. 14 CIV. 9137, 2015 WL 2151822, at *2 (S.D.N.Y. May 7, 2015) ("The Plaintiffs cannot recover for emotional stress, as RESPA is limited by its terms to "actual damages . . . ").  This absence of damages is fatal to Plaintiff's claims.  *See Bonadio v. PHH Mortg. Corp.*, No. 12-CV-3421, 2014 U.S. Dist. LEXIS 20719, at *14 (S.D.N.Y. Jan. 13, 2014) ("Although RESPA permits recovery of both actual and statutory damages, proof of actual damages is mandatory to recover on a § 2605 [ ] violation, and a § 2605[ ] claim

cannot stand on statutory damages alone.") (quotation marks omitted).  Accordingly, both because these claims are abandoned, and because plausible allegations of actual damages are absent, Gali has failed to adequately allege an injury-in-fact necessary to confer standing, and the Court dismisses these Causes of Action.

### ii. Traceability

Plaintiff's First and Second Causes of Action have also adequately alleged a nexus between his injury and Defendant's purported RESPA violations.  "The traceability requirement for Article III standing means that the plaintiff must demonstrate a causal nexus between the defendant's conduct and the injury," and such a relationship can either be direct or indirect.  *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013).  The requirement that a complaint "allege[ ] an injury" that is "'fairly traceable' to defendants' conduct ... for [purposes of] constitutional standing" is a "lesser burden" than the requirement that it show proximate cause. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 122 n.8 (2d Cir. 2003).  Thus, the fact that there is an intervening cause of the plaintiff's injury may foreclose a finding of proximate cause but is not necessarily a basis for finding that the injury is not "fairly traceable" to the acts of the defendant.  *Rothstein*, 708 F.3d at 92.  Like the arguments advanced as to injury-in-fact, Astoria Bank also argues that Plaintiff has failed to satisfy traceability as his injuries are self-inflicted and that it was not obligated to provide a loss mitigation option.  *See* Def. Br. at 10-12.  These arguments miss the mark.

As set forth above, Section 1024.41(a) while not requiring Astoria Bank to provide a specific loss mitigation program for Gali, does not insulate a loan servicer

from liability for failure to follow Regulation X's loss mitigation procedures. Plaintiff's allegations demonstrate a sufficient nexus between Defendant's failure to adhere to the requirements of Regulation X and his purported actual damages. Specifically, Gali's March 24, 2016 foreclosure action and subsequent actual damages in the form of bankruptcy proceeding filing fees and credit counseling fees can be indirectly traced back to Astoria Bank's alleged failure to consider Gali's loss mitigation application.  Therefore, the First and Second Causes of Action adequately allege that Plaintiff's injuries are fairly traceable to Defendant's conduct as required to establish standing.

### iii.  Redressability

Finally, Gali's First and Second Causes of Action also adequately allege redressability.  Redressability is the "non-speculative likelihood that the injury can be remedied by the requested relief."  *W.R. Huff Asset Management Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106–07 (2d Cir. 2008).  "[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561, 112 S.Ct. at 2130 (internal quotation marks omitted).  "Relief that does not remedy the injury suffered cannot bootstrap a plaintiff into federal court."  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107, 118 S.Ct. 1003, 1019 (1998).  Astoria Bank correctly argues that "Plaintiff cannot obtain any injunction or any vacatur of a foreclosure sale under RESPA." *See Wenegieme*, 2015 WL 2151822, at *2 ("The Plaintiffs also seek an injunction preventing any sale of their property, but the RESPA statute at issue only authorizes a claim for money damages.").  However, Defendant ignores the alleged pecuniary

17

losses that Gali has purportedly sustained.  As discussed above, Section 2605(f) enforces Regulation X by allowing borrowers to claim actual damages, which Plaintiff also seeks.  If otherwise successful, Gali could collect such actual damages, and therefore, has adequately alleged redressability.

### B. <u>Failure to State a Claim</u>

Having established standing, and therefore, subject matter jurisdiction over Plaintiff's First and Second Causes of Action, the Court nevertheless concludes that they fail to state a claim upon which relief can be granted.  Defendant argues that it was not required to review and consider Plaintiff's loss mitigation application because it was submitted too late and was missing documents and information.  *See* Def. Br. at 28-30.  Additionally, Astoria Bank argues that it did not proximately cause Gali's alleged damages and that he has not suffered actual or statutory damages.  *See id.* at 17-28.  In response, Plaintiff contends that the loss mitigation application was complete, or at least facially complete, and timely and that he has adequately alleged that he suffered actual and statutory damages.  *See* Pl.'s Br. at 20-24.

As set forth above, Gali's First and Second Causes of Action are made pursuant to Sections 1024.41(c)(1) and 1024.41(g), respectively.[1]  Both Sections establish that a mortgage servicer must evaluate complete loss mitigation applications received more than thirty-seven days before a foreclosure sale. *See* 12 C.F.R. § 1024.41(c)(1), (g)(1).  "A complete loss mitigation application means an application in connection

---

[1] Section 1024.41(c)(1) deals with the evaluation of loss mitigation applications and Section 1024.41(g) contains an express prohibition on the practice of dual-tracking.  However the Court analyzes Sections 1024.41(c)(1) and (g) in conjunction with additional provisions within Section 1024.41 for the sake of clarity.

with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower."  12 C.F.R. § 1024.41(b)(1).

Further, under Section 1024.41, if a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, the servicer shall notify the borrower in writing within five business days after "receipt of the loss mitigation application and that the servicer has determined that the loss mitigation application is either complete or incomplete." *See* 12 C.F.R. § 1024.41(b)(2)(i)(B).  The notice must also state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date by which the borrower should submit the documents and information.  *See id*; *see also* 12 C.F.R. § 1024.41(b)(2)(iii).  The CFPB's official interpretation of this Section confirms that "[a] servicer has flexibility to establish its own application requirements and to decide the type and amount of information it will require from borrowers applying for loss mitigation options." 12 C.F.R. part 1024, Supp. I, Interpretation of § 1024.41, ¶ 1. "A servicer shall exercise reasonable diligence in obtaining documents and information to complete a loss mitigation application."  12 C.F.R. § 1024.41(b)(1).

If a borrower submits all the missing documents and information as stated in the servicer's notice, or no information is requested in the notice, "the application shall be considered facially complete."  12 C.F.R. § 1024.41(c)(2)(iv).  Section 1024.41(c)(2)(iv) discusses facial completeness:

> If a borrower submits all the missing documents and information as stated in the notice required pursuant to

§ 1026.41(b)(2)(i)(B), or no additional information is requested in such notice, the application shall be considered facially complete. If the servicer later discovers additional information or corrections to a previously submitted document are required to complete the application, the servicer must promptly request the missing information or corrected documents and treat the application as complete for the purposes of paragraphs (f)(2) and (g) of this section until the borrower is given a reasonable opportunity to complete the application. If the borrower completes the application within this period, the application shall be considered complete as of the date it was facially complete, for the purposes of paragraphs (d), (e), (f)(2), (g), and (h) of this section, and as of the date the application was actually complete for the purposes of paragraph (c). A servicer that complies with this paragraph will be deemed to have fulfilled its obligation to provide an accurate notice under paragraph (b)(2)(i)(B).

If the borrower fails to respond within the reasonable time provided and the application remains incomplete, the servicer may also, at its discretion, evaluate the incomplete application. 12 C.F.R. § 1024.41(c)(2)(ii). On the other hand, if the borrower submits the requested documents or no additional information is requested, the application is considered "facially complete," a term commensurate with general "completeness" for the purposes of triggering the servicer's evaluation obligations. *See id.* at 12 C.F.R. § 1024.41(c)(2)(iv). When the application is rendered complete—either in actuality or facially—more than thirty-seven days before the foreclosure sale, the evaluation procedures under Subsection (c) are triggered. *See id.* at § 1024.41(c).

### i. Timeliness of Gali's Loss Mitigation Application

Initially, Astoria Bank argues that Gali has failed to state a claim as his complete loss mitigation application was not submitted more than thirty-seven days

before the March 24, 2016 foreclosure sale.  However, the Court declines to consider the documents submitted as exhibits in support of Defendant's arguments as to the timeliness of Plaintiff's loss mitigation application.   In support of its motion, Defendant annexes a series of correspondence that purportedly demonstrate that Plaintiff failed to timely submit a complete loss mitigation application.  *See* Def. Br. at 28-30; *see also* DE [6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25].  Astoria Bank argues that the Court should consider these documents as they were "integral" to the framing of the Complaint.  *See* Def. Br. at 16.  In opposition, Plaintiff asserts that the exhibits annexed to the Complaint demonstrate that the initial loss mitigation application was complete.  *See* Pl.'s Br. at 20.  "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient."  *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985); *see also Gant v. Wallingford Bd. of Ed.*, 69 F.3d 669, 673 (2d Cir. 1995) ("The issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.") (citations and internal quotation marks omitted).  In light of Plaintiff's claims, considering Defendant's exhibits would cause the Court to weigh the factual sufficiency of each party's submission, which would be inappropriate in the context of a motion to dismiss.  *Oxman v. Downs*, 999 F. Supp. 2d 404, 407 (E.D.N.Y. 2014) ("Generally, when a defendant attempts to counter a plaintiff's Complaint with its own factual allegations and exhibits, such allegations and exhibits are inappropriate for consideration by this Court at the

motion to dismiss stage."). As a result, the Court declines to consider Defendant's exhibits.[2] Therefore, standing alone, the allegations in Plaintiff's Complaint establish that he submitted a complete loss mitigation application thirty-seven days before the foreclosure proceeding scheduled for the Subject Property sufficient to defeat Defendant's motion.

> ## ii. Proximate Cause of Gali's Alleged Actual and Statutory Damages

Gali has failed, however, to sufficiently allege that his actual damages were proximately caused by Astoria Bank's purported violations of Regulation X. To survive a motion to dismiss, a complaint must contain "factual allegation[s] suggesting that any damages [plaintiff] suffered were proximately caused by [defendant's] violations of § 2605." *Gorbatty*, 2012 WL 1372260, at *5. Here, Plaintiff confirms that, had Defendant provided a written denial of his loss mitigation application, he would still have filed for bankruptcy. Pl. Opp. at 12 (stating that a written denial of his loss mitigation application would have provided him with the opportunity to file "for protection under the bankruptcy laws"). By extension,

---

[2] The Court also declines to convert the instant motion to dismiss into a motion for summary judgment. On a 12(b)(6) motion, "[i]f matters outside the pleadings are presented to the court, a court may convert the motion to dismiss into a summary judgment motion." *Vaillette v. Lindsay*, No. 11-CV-3610, 2014 WL 4101513, at *3 (E.D.N.Y. Aug. 18, 2014); *see also Friedl v. City of N.Y.*, 210 F.3d 79, 83 (2d Cir. 2000) ("When matters outside the pleadings are presented in response to a 12(b)(6) motion, a district court must either exclude the additional material and decide the motion on the complaint alone or convert the motion to one for summary judgment under Fed. R. Civ. P. 56 and afford all parties the opportunity to present supporting material.") (internal quotation marks and alterations omitted). Whether to convert the motion is in the District Court's discretion. *See Liberty Mut. Ins. Co. v. N. Picco & Sons Contracting Co.*, No. 05 CIV. 217, 2008 WL 190310, at *3 (S.D.N.Y. Jan. 16, 2008) ("It is within the discretion of this Court to convert a motion filed under Rule 12(b)(6) into a motion seeking summary judgment when matters outside the pleadings have been presented and accepted by the Court, and where all parties have been given a reasonable opportunity to present materials pertinent to the motion's disposition.") (internal quotation marks omitted). As the Court grants Defendant's motion in its entirety with prejudice, the question of conversion is academic and the Court, in its discretion, declines to convert the instant motion.

Plaintiff's loss mitigation application would only have helped him avoid filing for bankruptcy if Defendant had provided him with a specific loss mitigation option, which it was not obligated to provide pursuant to 12 C.F.R. § 1024.41(a).  Therefore, the causal nexus to Plaintiff's actual damages is premised upon being provided with a specific loss mitigation option, and not any alleged violations of Section 1024.41.  Plaintiff's Complaint is also silent as to what, if any, actions committed by Defendant prevented him from filing for bankruptcy prior to the foreclosure.   Accordingly, Plaintiff is unable to establish that Astoria Bank's purported violations of Regulation X proximately caused him to sustain his alleged actual damages, and the Court dismisses Gali's First and Second Causes of Action as he fails to state a claim upon which relief can be granted.

### C. **Supplemental Jurisdiction Over State-Law Claims**

Having concluded that each of Plaintiff's federal claims against the Defendant must be dismissed, the Court declines to exercise supplemental jurisdiction over any remaining state law causes of action.  Supplemental jurisdiction over Plaintiff's state-law claims is governed by 28 U.S.C. § 1367, which provides that, "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . " 28 U.S.C. § 1367(a).  However, a district court may decline to exercise supplemental jurisdiction where, as here, all claims over which it had original jurisdiction have been dismissed.   28 U.S.C.  § 1367(c).   When such

circumstances arise prior to the commencement of trial, Second Circuit precedent consistently recognizes that, "the balance of factors to be considered," which includes "judicial economy, convenience, fairness and comity," "will point toward declining to exercise jurisdiction over the remaining state-law claims." *Valencia v. Lee,* 316 F.3d 299, 305 (2d Cir. 2003).

Astoria Bank filed its Rule 12 motion to dismiss the Complaint in *lieu* of an Answer. *See* DE [18]. Thus, this litigation is still in its initial stages and no discovery has taken place. Accordingly, the Court grants Defendant's motion to dismiss as to Plaintiff's federal claims and declines to exercise supplemental jurisdiction over his state-law causes of action.

### D. Leave to File an Amended Complaint

While leave to amend a complaint should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), it is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Consistent with this principle, "a district court may deny leave to amend when, as here, amendment would be futile because the problem with the claim 'is substantive ... [and] better pleading will not cure it.'" *Reynolds v. City of Mount Vernon*, 14-CV-1481, 2015 WL 1514894, at *5 (S.D.N.Y. Apr. 1, 2015) (quoting *Cuoco v. Moritsugu,* 222 F.3d 99, 112 (2d Cir. 2000)).

The Court finds that the deficiencies in Gali's pleadings are substantive and, due to the untenable nature of his claims, any subsequent amendments would be futile. Additionally, in its opposition Plaintiff has not requested permission to file an

24

amended complaint, nor has he "given any indication that [he] is in possession of facts that would cure the problems identified in this opinion." *Clark v. Kitt*, 12-CV-8061, 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014).  Accordingly, as the facts present in the pleadings "give[] no indication that a valid claim may be stated," the Court denies Plaintiff leave to amend. *See Flaherty v. All Hampton Limousine, Inc.*, 02-CV-4801, 2008 WL 2788171, at *8 (E.D.N.Y. July 16, 2008).

## IV.   CONCLUSION

For the reasons set forth here, the Court grants Defendant's motion and Plaintiff's Complaint is dismissed with prejudice.


Dated: Central Islip, New York
           September 27, 2017

s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge
